UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00741-GNS-CHL

CAROL COLEMAN                                                                              PLAINTIFF

v.

JPMORGAN CHASE BANK, N.A.                                                         DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Dismiss (DN 16). This motion is ripe for adjudication. For the reasons set forth below, the motion is **GRANTED**.

### I. STATEMENT OF FACTS

Plaintiff Carol Coleman ("Plaintiff") is an African-American woman, pastor, and resident of Louisville, Kentucky. (Am. Compl. ¶¶ 1, 10, DN 15). Plaintiff was a customer of Defendant JPMorgan Chase Bank, N.A. ("Chase"), which operates branches in Louisville. (Am. Compl. ¶ 15).

The series of incidents leading to this action began when Plaintiff went to a Chase branch to deposit a $30,000 check from one of her parishioners named Morra Henriksen ("Henriksen"). (Am. Compl. ¶¶ 10, 16). Henriksen at some point in the past donated a house to Plaintiff, but Henriksen still resides there. (Am. Compl. ¶¶ 10-11). The house needed repairs, and Henriksen wrote the check to Plaintiff to fund the work. (Am. Compl. ¶¶ 11-12).

When Plaintiff attempted to deposit the check, she noticed the back had been marked "void." (Am. Compl. ¶ 16). According to Plaintiff, the bank teller told her that "this sort of thing had happened before," and the teller said she would find someone to help Plaintiff. (Am. Compl.

¶ 17). Jeanie Sharp Ramey ("Ramey"), a white female, instructed Plaintiff to call Henriksen to bring down another check, or Ramey offered to print one if she did not have another check. (Am. Compl. ¶¶ 18-19). Henriksen came to the bank and drew a $30,000 bank check which was deposited into Plaintiff's account. (Am. Compl. ¶ 21).

After this deposit was made, Plaintiff attempted to use her bank account to pay for a cruise. (Am. Compl. ¶ 23). Plaintiff had previously collected money from Henriksen and other parishioners for other group cruises and then paid the full amount from her account. (Am. Compl. ¶ 22). This time, however, the payment was declined. (Am. Compl. ¶ 23). When Plaintiff visited a Chase branch to determine why the payment was declined, a manager informed her that a global freeze had been placed on her account, and that someone would contact her about the matter. (Am. Compl. ¶¶ 24-25).

Later that day, Chase employee Lisa Peterson ("Peterson") contacted Plaintiff. (Am. Compl. ¶ 26). Peterson informed Plaintiff her account had been frozen because the bank was conducting an investigation. (Am. Compl. ¶ 26). Peterson then asked Plaintiff a series of questions that Plaintiff describes as "essentially accus[ing] her of taking advantage of Ms. Henriksen by getting her to fund everything Ms. Coleman did, financing her cruises, and paying her bills." (Am. Compl. ¶ 27). Peterson stated she noticed Henriksen had been giving checks regularly to Plaintiff. (Am. Compl. ¶ 28). Plaintiff acknowledges this "was true since Ms. Henriksen had been tithing to her Pastor, i.e., Plaintiff." (Am. Compl. ¶ 28).

Plaintiff grew weary of what she viewed as Peterson's accusations and decided to contact her attorney and Henriksen. (Am. Compl. ¶¶ 30-31). Subsequently, Henriksen went to Chase and spoke to Peterson. (Am. Compl. ¶¶ 32, 34). Peterson asked Henriksen questions regarding matters

2

such as how long Henriksen had known Plaintiff and the name of Plaintiff's church.[1] (Am. Compl. ¶ 35). Henriksen asked why she had to answer these questions, stating she was free to do whatever she wished with her money. (Am. Compl. ¶ 37). Peterson replied that her job was to protect Chase customers from fraud, and Henriksen advised that she needed no such protection. (Am. Compl. ¶ 38). Plaintiff's attorney subsequently sent a letter to Chase seeking an explanation of why her account was frozen. (Am. Compl. ¶ 40). Chase never responded but sent Plaintiff a letter informing her that her account had been closed. (Am. Compl. ¶¶ 40-41).

In this lawsuit, Plaintiff alleges that Defendant discriminated against her because of her race in violation of 42 U.S.C. § 1981 and KRS 344.120. (Am. Compl. ¶¶ 48-51). Plaintiff further asserts claims for breach of contract, conversion of personal property, intentional infliction of emotional distress, and slander per se. (Am. Compl. ¶¶ 52-53, 57-59, 60-66).

## II.     STANDARD OF REVIEW

Under Fed. R. Civ. P. 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) is an affirmative defense that permits a defendant to seek dismissal of a case for a plaintiff's failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

In ruling on a Rule 12(b)(6) motion to dismiss, the Court must determine whether a plaintiff's complaint asserts adequate factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing a motion to dismiss, the Court "must construe the complaint in the

---

[1] Nowhere in the Amended Complaint does Plaintiff mention the name of the church where she serves as pastor.

light most favorable to plaintiffs," but need not accept the complaint's legal conclusions as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted); *Iqbal*, 556 U.S. at 678. To satisfy the pleading requirements, a plaintiff must assert "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," or "a formulaic recitation of the elements of a cause of action." *Id.* (citing *Twombly*, 550 U.S. at 556). In ruling on the motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Stringfield v. Graham*, 212 F. App'x 530, 535 (6th Cir. 2007) (stating that documents "attached to and cited by [the] complaint . . . are considered parts thereof under Federal Rule of Civil Procedure 10(c)").

### III. DISCUSSION[2]

#### A. Unlawful Discrimination in Violation of 42 U.S.C. § 1981 and KRS 344.120

Plaintiff asserts a claim under 42 U.S.C. § 1981, which provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as enjoyed by white citizens." *Id.* § 1981(a). The phrase "make and enforce contracts" is defined broadly to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). Plaintiff must therefore demonstrate both the existence

---

[2] In opposing the motion to dismiss, Plaintiff maintains that she has not had the opportunity to conduct discovery to unearth relevant facts and evidence to support her claims. (Pl.'s Resp. Mot. Dismiss 6-7, 16, DN 17 [hereinafter Pl.'s Resp.]). The present motion, however, challenges the sufficiency of the allegations in the Amended Complaint. A plaintiff is not entitled to proceed to discovery if the complaint does not provide enough relevant facts to make a claim appear plausible on its face. *See Iqbal*, 556 U.S. at 678-79. In arguing that her allegations are sufficient, Plaintiff relies on cases that predate the heightened pleading standards set out in the Supreme Court's decisions in *Twombly* and *Iqbal*.

4

of a contractual relationship as well as an act by Chase that impaired the performance of the contract motivated in some way by animus toward Plaintiff's race. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

Generally, Section 1981 claims are analyzed under the same standards as Title VII claims. *See Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999). At this point in the litigation, however, Plaintiff need not set out sufficient facts to establish a *prima facie* case as first outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Davis v. Prison Health Servs.*, 679 F.3d 433, 439-40 (6th Cir. 2012); *Williams v. Richland Cty. Children Servs.*, 489 F. App'x 848, 852 (6th Cir. 2012). Instead, Plaintiff need only establish the statutory basis for her claim and set forth the factual predicate for that claim. *See Lindsay v. Yates*, 498 F.3d 434, 440 (6th Cir. 2007). In determining the sufficiency of those factual allegations, courts must examine whether the plaintiff's factual allegations raise a plausible inference of wrongdoing. *See 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Id.* The Sixth Circuit has suggested that allegations will be found conclusory if they are empirically unverifiable or question-begged. *See Williams*, 448 F. App'x at 552.

In *16630 Southfield Limited Partnership*, a group of borrowers sued their lender alleging that the lender refused to refinance a loan because one member of the group was of Iraqi origin. *See 16630 Southfield Ltd. P'Ship*, 727 F.3d at 503. In support of their discrimination claim, the borrowers asserted their belief that: (1) the lender had treated comparable non-Iraqi applicants more favorably; (2) the lender had refinanced non-minority applicants who were delinquent; and (3) the lender had offered loans to non-Iraqis with lower debt to equity ratio and less collateral.

*See id.* at 506. The trial court granted the lender's motion to dismiss, however, concluding that these allegations were merely the plaintiffs' speculation, without evidence that such similarly-situated individuals existed. *See id.* On appeal, the Sixth Circuit affirmed and reasoned:

> The factual matter in the complaint does not support an inference of discrimination. [A borrower's] Iraqi origin does not by itself establish the requisite inference. [A borrower's] offer of his wife's guarantee and new collateral does not tip the scales. Banks often refuse to provide secured loans, just as they often refuse to provide unsecured ones. And a bank, once bitten by the failure to receive repayment of an initial loan on time, may understandably become twice shy about restructuring the loan a second time. Nor, in the face of these common sense explanations for [the lender's] conduct in the aftermath of the 2008 financial meltdown, does [the lender's] refusal to explain its decision help the plaintiffs make any headway.
>
> A more obvious explanation, indeed the most obvious explanation, for [the lender's] conduct was its understandable concern about repayment. . . .
>
> Common sense suggests that [the lender] denied Southfield's request for a further extension because it thought the extension was a bad business proposition, not because it wanted to discriminate against people of Iraqi origin. When all is said and done, the factual matter in the complaint does not support an inference of discrimination. . . .
>
> These are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency. No doubt disparate treatment of similarly situated people may support an inference of discrimination. But the plaintiffs have not identified any similarly situated individuals whom [the lender] treated better. They have merely alleged their "belief" that such people exist. These "naked assertions devoid of further factual enhancement" contribute nothing to the sufficiency of the complaint.

*Id.* (internal citations omitted) (citation omitted).

Similar to the scenario in *16630 Southfield Limited Partnership*, Plaintiff alleges Chase treated her differently from similarly-situated individuals on account of her race. (Am. Compl. ¶¶ 42, 43, 45). In *16630 Southfield Limited Partnership*, the plaintiffs at least stated that other customers who were not members of a protected class received loans and refinancing with less attractive debt to equity ratios, even if they did not identify who those individuals were. *See 16630 Southfield Ltd. P'ship*, 727 F.3d at 506 (citation omitted). In the case *sub judice*, Plaintiff merely

6

casts a blanket statement that Defendant treated others differently. To be sure, evidence of disparate treatment of similarly-situated individuals may serve as evidence supporting an inference of discrimination. *See Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012). Such allegations, however, must be supported by something other than the plaintiff's unsubstantiated suppositions. *See 16630 Southfield Ltd. P'ship*, 727 F.3d at 504 ("[A] plaintiff cannot overcome a Rule 12(b)(6) motion to dismiss simply by referring to conclusory allegations in the complaint that the defendant violated the law. Instead, the sufficiency of a complaint turns on its 'factual content,' requiring the plaintiff to plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing. The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." (internal citations omitted) (citing *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567)). As in *16630 Southfield Limited Partnership*, Plaintiff's conclusory allegations that she was treated differently due to her race, without more, does not suffice.

Further, Chase has offered its alternative explanation to the claim of discrimination—that Plaintiff's use of a voided check raised a legitimate need to investigate the surrounding circumstances. "Ferreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage." *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011). "But you can't assess the plausibility of an inference in a vacuum. The reasonableness of one explanation for an incident depends, in part, on the strength of competing explanations." *16630 Southfield Ltd. P'ship*, 727 F.3d at 505.

Plaintiff's allegations offer no direct evidence of discrimination and instead recite the bare elements of Chase's liability—that Plaintiff is African American and was treated differently. The unusual circumstances cited by Chase as warranting its investigation are wholly based upon facts

alleged in the Amended Complaint: the presentation of a $30,000 check marked as void, from a parishioner to her pastor individually, not to a church, and a series of money transfers from Henriksen to Plaintiff. (Am. Compl. ¶¶ 10-14, 16, 28). Under these circumstances, common sense would dictate that Chase's actions were proportionate to its stated interest to protect itself and its customers. Given the absence of any plausible factual allegations supporting an inference of discrimination, Chase's explanation "simply illustrates the unreasonableness of the inference sought and the implausibility of the claims made." *16630 Southfield Ltd. P'ship*, 727 F.3d at 505. Plaintiff has therefore failed to state a claim under Section 1981, and this claim will be dismissed.

Plaintiff has also failed to state a claim under the Kentucky Civil Rights Act ("KCRA"), KRS 344.120. In relevant part, the statute provides that "[i]t is an unlawful practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement . . . on the ground of . . . race . . . ." KRS 344.120.

As the Kentucky Supreme Court has noted, "[i]n 1966, the General Assembly passed the KCRA to place the Commonwealth on par with the protections guaranteed in the Federal Civil Rights Act of 1964." *Bd. of Regents of N. Ky. Univ. v. Weickgenannt*, 485 S.W.3d 299, 305 (Ky. 2016). The KCRA was subsequently amended to reflect added federal protections brought about by Title VII of the Federal Civil Rights Act of 1968, the Fair Housing Act, the Federal Age Discrimination in Employment Act of 1967, the Americans with Disabilities Act of 1990, and the Civil Rights Act of 1991. *See id.* at 305 n.3 (citing KRS 344.020(1)). As this Court has explained, "[t]he KCRA 'is similar to Title VII . . . and should be interpreted consistently with federal law.' Likewise, § 1981 'prohibits intentional race discrimination in the making and enforcing of contracts,' and courts analyze § 1981 claims under the 'same analytical framework' as Title VII

claims." *Radford v. Ebonite Int'l, Inc.*, No. 5:15-CV-00076-TBR, 2017 WL 3176282, at *4 (W.D. Ky. July 26, 2017) (internal citations omitted) (citation omitted); *see also Raithatha v. Univ. of Pikeville*, No. 7:16-CV-251-EBA, 2017 WL 4583245, at *4 (E.D. Ky. Oct. 13, 2017) ("Although distinct in arising under state—not federal—law, claims under K.R.S. § 344.120 'should be analyzed via the same framework' as one arising under 42 U.S.C. § 1981." (quoting *Miller v. Freedom Waffles, Inc.*, No. 3:06-CV-159-JGH, 2007 WL 628123, at *5 (W.D. Ky. Feb. 23, 2007))).

As discussed above, Plaintiff's Section 1981 claim fails to state a claim upon which relief can be granted. Because the same analysis applies to her KCRA claim, it likewise fails. Accordingly, the Court will dismiss this claim.

B. **<u>Breach of Contract</u>**

Under Kentucky law, a successful claim for breach of contract must demonstrate: (1) the existence of a contract; (2) a breach of that contract; and (3) damages caused by the breach. *See Tex. Capital Bank, N.A. v. First Am. Title Ins. Co.*, 822 F. Supp. 2d 678, 682 (W.D. Ky. 2011) (citing *Ward v. Daugherty*, 14 S.W.2d 1089, 1089 (Ky. 1929)). To survive a motion to dismiss, a plaintiff must identify specific terms of the contract the defendant has breached. *See Nationwide Mut. Fire Ins. Co. v. Castle*, No. 13-25-ART, 2013 WL 5503056, at *3 (E.D. Ky. Oct. 2, 2013). "The claimant must then allege facts indicating that his adversary somehow breached the relevant contractual terms." *Id.*

Plaintiff here alleges nothing other than the bald conclusion that Chase breached its contract with her. The Amended Complaint provides no fact which supports breach of a specific term, nor does it contain allegations explaining how any breach created damages under the contract. Plaintiff alleges only that when Henriksen stated she wanted to give money to Plaintiff,

9

Chase should have known there was no fraudulent activity, lifted the freeze, and stopped the investigation. (Pl.'s Resp. 12). Without reference to any contractual term or allegation of damage flowing from the claimed breach, the Amended Complaint fails to state a claim for breach of contract.

Plaintiff's breach of contract claim also fails when judged by the plain language of the account agreement between Plaintiff and Chase ("Account Agreement"), which specifies instances in which Chase might restrict a customer's account. (Def.'s Mot. Dismiss Ex. A, at 14, DN 16-1). Most relevant is the catch-all provision stating that Chase may restrict an account if "[w]e reasonably believe that doing so is necessary to avoid a loss or reduce risk to us." (Def.'s Mot. Dismiss Ex. A, at 14). The circumstances attendant Plaintiff's effort to deposit a void check appear to be just such an instance. Plaintiff's attempted deposit of Henriksen's $30,000 check raised concerns, and Chase investigated. Under the terms of the Account Agreement, Chase had broad latitude to freeze or otherwise restrict Plaintiff's account. The Amended Complaint does not set forth any plausible claim that Chase breached the contract when it froze the account as it was entitled to do under the terms of the Account Agreement.

As to the eventual closing of Plaintiff's account, again, the contract is clear: "[e]ither you or we may close your account . . . at any time for any reason or no reason without prior notice." (Def.'s Mot. Dismiss Ex. A, at 13). No additional interpretation is needed. Chase was within its contractual rights to close the account. Plaintiff has therefore failed to state a claim for breach of contract, and this count is dismissed.

### C. Slander Per Se

Plaintiff asserts a claim of slander per se. (Am. Compl. ¶¶ 63-66). The elements of defamation in Kentucky are: "(1) defamatory language; (2) about the plaintiff; (3) which is

published; and (4) which causes injury to reputation." *Pennington v. Dollar Tree Stores, Inc.*, 28 F. App'x 482, 489 (6th Cir. 2002) (citing *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. App. 1981)). A communication or statement is defamatory if it "tends to (1) bring a person into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or, (3) injure him in his business or occupation." *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981). Comments become slanderous per se when they falsely impute criminal acts to another. *See Pennington*, 28 F. App'x at 489.

Plaintiff's claim fails for a number of reasons. First, there is no allegation of any statement imputed to Chase that was defamatory. Plaintiff cites to her allegations that Peterson's questions made her feel accused of "taking advantage of Ms. Henriksen by getting her to fund everything Ms. Coleman did, financing her cruises, and paying her bills." (Pl.'s Resp. 14; Am. Compl. ¶ 27). Peterson's questions, however, did not qualify as defamatory. Plaintiff readily admits these questions that made her feel accused, as opposed to constituting some falsehood or accusation. Further, Peterson's statements were made to Plaintiff, not a third party. Absent publication to a third party, there is no defamation. *See Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014) (noting a required element of defamation is "publication to a third party . . . ." (internal quotation marks omitted) (quoting Restatement (Second) of Torts § 558 (1977))). The only communications addressed by Chase to a third party were the statements made to Henriksen, but Plaintiff has made no allegations of any false statements made to Henriksen. The Amended Complaint alleges Peterson told Henriksen that Peterson "needed to protect Chase Bank customers from fraud," which appears to have been exactly what Peterson was trying to do. (Am. Compl. ¶ 38). Certainly, there is no allegation that Peterson's statement was false or that Henriksen considered the statement to be an accusation against Plaintiff. The Court will dismiss this claim.

### D. <u>Conversion</u>

Plaintiff asserts Defendant converted her property when it refused to lift the global freeze on her account after learning from Henriksen that she wanted to donate money to Plaintiff.[3] (Am. Compl. ¶¶ 54-59; Pl.'s Resp. 16). Under Kentucky law, "[t]he elements of a conversion claim are (1) ownership rights in a certain property, (2) the wrongful act of taking or disposing of property, and (3) causing damages." *Davis v. Siemens Med. Sols. USA, Inc.*, 399 F. Supp. 2d 785, 803 (W.D. Ky. 2005) (citations omitted).

Plaintiff's claim for conversion as set forth in her Amended Complaint fails as a matter of law. In Kentucky, "[t]he deposit of money in a bank passes title and it becomes part of the assets of the bank . . . ." *Scoggan v. Dillon*, 252 S.W.2d 35, 37 (Ky. 1952) (citations omitted). Plaintiff's deposit of money with Chase transferred title to the funds and created a relationship where Plaintiff was the creditor and Chase was the debtor. *Id.* Title passed to Defendant as a matter of law, rendering conversion a legal impossibility. In dismissing a similar claim in *Webb. v. Republic Bank & Trust Co.*, No. 3:11-cv-00423-TBR, 2013 WL 5447709 (W.D. Ky. Sept. 30, 2013), the Court stated:

> Although Plaintiff retained the right to demand possession of the amount of money that she deposited, Kentucky law specifies that once funds are deposited into a bank account, the depositor no longer retains control over those specific funds. Therefore, because Plaintiff's funds could not be the subject of conversion, [] this claim accordingly fails.

*Id.* at *5 (internal citation omitted)). The circumstances of the present case are indistinguishable from *Webb* and Plaintiff's conversion claim against Chase is therefore properly dismissed.

---

[3] Notably, the Amended Complaint asserts only a general accusation of conversion. The factual allegation upon which Plaintiff is the conversion claim is gleaned from the four-sentence argument in Plaintiff's Response to Defendant's Motion to Dismiss.

### E. Intentional Infliction of Emotional Distress Claim

Plaintiff's final claim is for intentional infliction of emotional distress. In responding to the motion, Plaintiff failed to address this claim, which is a concession that the claim fails as a matter of law. *See Helton v. Am. Gen. Life Ins. Co.*, 946 F. Supp. 2d 695, 705 (W.D. Ky. 2013); *Humphrey v. U.S. Att'y Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008). Accordingly, this claim will be dismissed.

### IV. CONCLUSION

For the reasons outlined above, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (DN 16) is **GRANTED**, and the Amended Complaint (DN 15) is **DISMISSED WITH PREJUDICE**.

Greg N. Stivers, Chief Judge
United States District Court

November 27, 2018

cc: counsel of record